offer and sale of securities. Rule 10b-10 requires broker dealers to disclose the source and amount of any remuneration received from third parties in connection with a securities transaction. The Order also finds that the conduct violated NASD Rule 2830(k), which prohibits NASD members from favoring the sale of mutual fund shares based on the receipt of brokerage commissions.

Stephen M. Cutler, Director of the Commission's Division of Enforcement, said: "Unbeknownst to Morgan Stanley's customers, Morgan Stanley received monetary incentives - in the form of "shelf space" payments -- to sell particular mutual funds to its customers. When customers purchase mutual funds, they should understand the nature and extent of any conflicts of interest that may affect the transaction."

Morgan Stanley has agreed to settle this matter, without admitting or denying the findings in the Commissions' Order. As part of the settlement, Morgan Stanley will pay $25 million in disgorgement and prejudgment interest. In addition, Morgan Stanley will pay civil penalties totaling $25 million. [. . .]

*    *    *

In addition, Morgan Stanley has undertaken to, among other things, (1) place on its website disclosures regarding the Partners Program; (2) provide customers with a disclosure document that will disclose, among other things, specific information concerning the Partners Program, and the differences in fees and expenses connected with the purchaser of different mutual fund share classes.

Finally, the Commission's Order censures Morgan Stanley and orders it to cease-and-desist from committing or causing any violations of Section 17(a)(2) of the Securities Act of 1933 and Rule 10b-10 under the Securities Exchange Act of 1934.

*    *    *

The NASD also announced today a settled action against Morgan Stanley for violations of NASD Rule 2830(k) arising from the Partners Program and its predecessor.

106.    On November 18, 2003, *The Washington Post* published an article entitled

"Morgan Stanley Settles With SEC, NASD." The article states in relevant part:

Investors who bought mutual funds from Morgan Stanley, the
nation's second-largest securities firm, didn't know that the
company was taking secret payments from some fund companies to
promote their products, according to allegations that resulted in a
$50 million settlement agreement yesterday with the Securities and
Exchange Commission.

In many cases, those same investors were actually footing the bill,
indirectly, for the slanted recommendations, the SEC said. Some
of the 16 fund companies whose products were pushed by Morgan
brokers paid for the marketing help by letting Morgan handle some
of their stock and bond trading. The millions of dollars in
commissions earned by Morgan on that trading came out of mutual
fund share owners' profits, according to the SEC.

**Morgan said yesterday that companies in its "Partners
Program" included . . . Fidelity Investments.**

\*    \*    \*

Yesterday's settlement "goes to show that the mutual fund
managers as well as broker dealers have too often viewed mutual
fund shareholders as sheep to be sheared, said Sen. Peter Fitzgerald
(R-Ill.), who is investigating the industry. "Congress has to figure
out the variety of ways people are being sheared so that we can
stop it."

[Emphasis added.]

107.    On January 14, 2004, *The Wall Street Journal* published an article under the

headline, "SEC Readies Cases On Mutual Funds' Deals With Brokers." Citing a "person

familiar with the investigation," the article notes that the SEC is "close to filing its first charges

against mutual fund companies related to arrangements that direct trading commissions to

brokerage firms that favor those fund companies' products." The article stated in pertinent part

as follows:

**The SEC has been probing the business arrangement between
fund companies and brokerage firms since last spring.** It held
a news conference yesterday to announce **it has found widespread
evidence that brokerage firms steered investors to certain
mutual funds because of payments they received from fund**

> **companies or their investment advisers as part of sales
> agreements.**
>
> Officials said the agency has opened investigations into eight
> brokerage firms and a dozen mutual funds that engaged in a
> longstanding practice known as "revenue sharing." Agency
> officials said they expect that number to grow as its probe expands.
> They declined to name either the funds or the brokerage firms.
>
> The SEC said payments varied between 0.05% and 0.04% of sales
> and up to 0.25% of assets that remained invested in the fund.
>
> **People familiar with the investigation say regulators are
> looking into examples of conflict of interest when fund
> companies use shareholder money to cover costs of sales
> agreements instead of paying the sales costs themselves out of
> the firm's own pockets. The boards of funds, too, could be
> subject to scrutiny for allowing shareholders' commission
> dollars to be used for these sales agreements. In other cases,
> the SEC is probing whether funds violated policies that would
> require costs associated with marketing a fund to be included
> in a fund's so-called 12b-1 plan.**

[Emphasis added.]

## The Prospectuses Were Materially False And Misleading

108.    Plaintiffs and other members of the Class were entitled to, and did receive, one or

more of the prospectuses (the "Prospectuses"), pursuant to which the Fidelity Funds shares were

offered, each of which contained substantially the same materially false and misleading

statements and omissions regarding 12b-1 fees, commissions and Soft Dollars.

109.    The Prospectus Dated December 30, 2002 for funds offered by Fidelity

Investment Trust is typical of Prospectuses available for other Fidelity Funds. It states as follows

with respect to 12b-1 fees, revenue sharing and directed brokerage:

> **Each fund has adopted a Distribution and Service Plan
> pursuant to Rule 12b-1 under the Investment Company Act of
> 1940 that recognized that FMR may use its management fee
> revenues, as well as its past profits or its resources from any**

**other source, to pay FDC for expenses incurred in connection with providing services intended to result in the sale of fund shares and/or shareholder support services. FMR, directly or through FDC, may pay significant amounts to intermediaries, such as banks, broker-dealers, and other service providers [sic], that provide those services. Currently, the Board of Trustees of each fund has authorized such payments.**

If payments made by FMR to FDC or to intermediaries under a Distribution and Service Plan were considered to be paid out of a fund's assets on an ongoing basis, they might increase the cost of your investment and might cost you more than paying other types of sales charges.

* * *

FMR may allocate brokerage transactions in a manner that takes into account the sale of shares of a fund, provided that the fund receives brokerage services and commission rates comparable to those of other broker-dealers.

[Emphasis added.]

110.    The Statement of Additional Information, dated December 30, 2002 for funds

offered by Fidelity Investment Trust is available to the investor upon request and is typical of

Statements of Additional Information available for other Fidelity Funds. It states as follows with

respect to Soft Dollars and revenue sharing:

**Brokers or dealers that execute transactions for a fund may receive commissions that are in excess of the amount of commission that other brokers or dealers might have charged, in recognition of the products and services they have provided.**

* * *

**FMR is authorized to allocate portfolio transactions in a manner that takes into account assistance received in the distribution of shares of the funds or other Fidelity funds and to use the research service brokerage and other firms that have provided such assistance.**

[Emphasis added.]

F:\FIDELITY\CMPLTAWA.WPD

111.   The Prospectuses failed to disclose and misrepresented, *inter alia*, the following material and damaging adverse facts which damaged plaintiffs and other members of the Class:

a.   that Fidelity authorized the payment from fund assets of excessive commissions to broker dealers in exchange for preferential marketing services and that such payments were in breach of their fiduciary duties, in violation of Section 12b of the Investment Company Act, and unprotected by any "safe harbor";

b.   that Fidelity directed brokerage payments to firms that favored Fidelity Funds, which was a form of marketing that was not disclosed in or authorized by the Fidelity Funds Rule 12b-1 Plan;

c.   that the Fidelity Funds Rule 12b-1 plan was not in compliance with Rule 12b-1, and that payments made pursuant to the plan were in violation of Section 12 of the Investment Company Act because, among other reasons, the plan was not properly evaluated by the Trustee Defendants and there was not a reasonable likelihood that the plan would benefit the company and its shareholders;

d.   that by paying brokers to aggressively steer their clients to Fidelity Funds, Fidelity was knowingly aiding and abetting a breach of fiduciary duties, and profiting from the brokers' improper conduct;

e.   that any economies of scale achieved by marketing of the Fidelity Funds to new investors were not passed on to Fidelity Funds investors;

f.   that defendants improperly used Soft Dollars and excessive commissions paid from Fidelity Funds assets, to pay for overhead expenses, the cost of which should have been borne by Fidelity and not Fidelity Funds investors; and

g.   that the Trustee Defendants had abdicated their duties under the

F:\FIDELITY\CMPLTAWA.WPD

Investment Company Act and their common law fiduciary duties, that they failed to monitor and

supervise Fidelity and that, as a consequence, Fidelity was able to systematically skim millions

and millions of dollars from the Fidelity Funds.

## COUNT I

### Against FMR, FMRC and the Trustee Defendants For Violations Of Section 34(b) Of The Investment Company Act On Behalf Of The Class

112.    Plaintiffs repeat and reallege each and every allegation contained above as if fully

set forth herein.

113.    This Count is asserted against FMR and FMRC in their role as investment

advisers to the Fidelity Funds and against the Trustee Defendants as trustees of the Fidelity

Funds.

114.    FMR, FMRC and the Trustee Defendants made untrue statements of material fact

in registration statements and reports filed and disseminated pursuant to the Investment Company

Act and omitted to state facts necessary to prevent the statements made therein, in light of the

circumstances under which they were made, from being materially false and misleading.  FMR,

FMRC and the Trustee Defendants failed to disclose the following:

a.    that Fidelity authorized the payment from fund assets of excessive

commissions to broker dealers in exchange for preferential marketing services and that such

payments were in breach of their fiduciary duties, in violation of Section 12(b) of the Investment

Company Act, and unprotected by any "safe harbor";

b.    that Fidelity directed brokerage payments to firms that favored Fidelity

Funds, which was a form of marketing that was not disclosed in or authorized by the Fidelity

Funds Rule 12b-1 Plan;

c.    that the Fidelity Funds Rule 12b-1 were not in compliance with Rule 12b-1, and that payments made pursuant to the plans were in violation of Section 12 of the Investment Company Act because, among other reasons, the plans were not properly evaluated by the Trustee Defendants and there was not a reasonable likelihood that the plans would benefit the company and its shareholders;

d.    that by paying brokers to aggressively steer their clients to Fidelity Funds, Fidelity was knowingly aiding and abetting a breach of fiduciary duties, and profiting from the brokers' improper conduct;

e.    that any economics of scale achieved by marketing of the Fidelity Funds to new investors were not passed on to Fidelity Funds investors;

f.    that defendants improperly used Soft Dollars and excessive commissions, paid from Fidelity Funds assets, to pay for overhead expenses, the cost of which should have been borne by Fidelity and not Fidelity Funds investors; and

g.    that the Trustee Defendants had abdicated their duties under the Investment Company Act and their common law fiduciary duties, that the Trustee Defendants failed to monitor and supervise Fidelity and that, as a consequence, Fidelity was able to systematically skim millions and millions of dollars from the Fidelity Funds.

115.    By reason of the conduct described above, FMR, FMRC and the Trustee Defendants violated Section 34(b) of the Investment Company Act.

116.    As a direct, proximate and foreseeable result of FMR, FMRC and the Trustee Defendants' violation of Section 34(b) of the Investment Company Act, Fidelity Funds investors have incurred damages.

117.    Plaintiffs and the Class have been specially injured by Defendants' violations of

F:\FIDELITY\CMPLTAWA.WPD

Section 34(b) of the Investment Company Act. Such injuries were suffered directly by the

shareholders, rather than by the Fidelity Funds themselves.

118.    FMR, FMRC and the Trustee Defendants, directly and indirectly, by the use,

means or instrumentalities of interstate commerce and/or the mails, engaged and participated in a

continuous course of conduct to conceal such adverse material information.

## COUNT II

### Against FMR, FMRC and FDC Pursuant To
### Section 36(b) Of The Investment Company Act
### Derivatively On Behalf Of The Fidelity Funds

119.    Plaintiffs repeat and reallege each and every allegation contained above and

otherwise incorporates the allegations contained above.

120.    This Count is brought by the Class (as Fidelity Funds securities holders) on behalf

of the Fidelity Funds against FMR, FMRC and FDC for breach of their fiduciary duties as

defined by Section 36(b) of the Investment Company Act.

121.    FMR, FMRC and FDC each had a fiduciary duty to the Fidelity Funds and the

Class with respect to the receipt of compensation for services and of payments of a material

nature made by and to FMR, FMRC and FDC .

122.    FMR, FMRC and FDC  violated Section 36(b) by improperly charging investors

in the Fidelity Funds purported Rule 12b-1 marketing fees, and by drawing on the Fidelity Funds

assets to make undisclosed payments of Soft Dollars and excessive commissions, as defined

herein, in violation of Rule 12b-1

123.    By reason of the conduct described above, FMR, FMRC and FDC violated

Section 36(b) of the Investment Company Act.

124.    As a direct, proximate and foreseeable result of FMR, FMRC and FDC 's breach

F:\FIDELITY\CMPLTAWA.WPD

42

of the fiduciary duty of loyalty in their respective roles as underwriter and investment advisers to

Fidelity Funds investors, the Fidelity Funds and the Class have incurred millions of dollars in

damages.

125.    Plaintiffs, in this Count, seeks to recover the Rule 12b-1 fees, Soft Dollars,

excessive commission and the management fees charged the Fidelity Funds by FMR, FMRC and

FDC .

## COUNT III

### Against The Johnson Family Group, FMR Corp. And The Trustee Defendants  (As Control Persons of FMR, FRMC and FDC), For Violation Of Section 48(a) Of The Investment Company Act By The Class And Derivatively On Behalf Of The Fidelity Funds

126.    Plaintiffs repeat and reallege each and every allegation contained above as if fully

set forth herein.

127.    This Count is brought pursuant to Section 48(a) of the Investment Company Act

against the Johnson Family Group, FMR Corp. and the Trustee Defendants as control persons of

FMR, FMRC and FDC, who caused FMR, FRMC and FDC to commit the violations of the

Investment Company Act alleged herein.  It is appropriate to treat these defendants as a group for

pleading purposes and to presume that the misconduct complained of herein are the collective

actions of the Johnson Family Group, FMR Corp. and the Trustee Defendants.

128.    FMR and FMRC are liable under Sections 34(b) of the Investment Company Act

to the Class and FMR, FMRC and FDC are liable under 36(b) of the Investment Company Act to

the Fidelity Funds as set forth herein.

129.    The Johnson Family Group, FMR Corp. and the Trustee Defendants were "control

persons" of FMR, FMRC and FDC and caused the violations complained of herein.  By virtue of

their positions of operational control and/or authority over FMR, FMRC and FDC, the Johnson

Family Group, FMR Corp. and the Trustee Defendants directly and indirectly, had the power and

authority, and exercised the same, to cause FMR, FMRC and FDC to engage in the wrongful

conduct complained of herein.

130.    Pursuant to Section 48(a) of the Investment Company Act, by reason of the

foregoing, the Johnson Family Group, FMR Corp. and the Trustee Defendants are liable to

plaintiffs to the same extent as are FMR and FMRC for their primary violations of Sections 34(b)

and 36(b) of the Investment Company Act and to the same extent as are FMR, FMRC and FDC

for their primary violations of Section 36(b) of the Investment Company Act.

131.    By virtue of the foregoing, Plaintiffs and other Class members are entitled to

damages against the Johnson Family Group, FMR Corp. and the Trustee Defendants.

## COUNT IV

### Against FMR and FMRC Under Section 215 Of The Investment Advisers Act For Violations Of Section 206 Of The Investment Advisers Act Derivatively On Behalf Of The Fidelity Funds

132.    Plaintiffs repeat and reallege each and every allegation contained above as if fully

set forth herein.

133.    This Count is based upon Section 215 of the Investment Advisers Act, 15 U.S.C.

§80b-15.

134.    FMR and FMRC served as "investment advisers" to the Fidelity Funds and other

members of the Class pursuant to the Investment Advisers Act.

135.    As fiduciaries pursuant to the Investment Advisers Act, FMR and FMRC were

required to serve the Fidelity Funds in a manner in accordance with the federal fiduciary

standards set forth in Section 206 of the Investment Advisers Act, 15 U.S.C. §80b-6, governing

F:\FIDELITY\CMPLTAWA.WPD

the conduct of investment advisers.

136.    During the Class Period, FMR and FMRC breached their fiduciary duties to the
Fidelity Funds by engaging in a deceptive contrivance, scheme, practice and course of conduct
pursuant to which they knowingly and/or recklessly engaged in acts, transactions, practices and
courses of business which operated as a fraud upon the Fidelity Funds. As detailed above, FMR
and FMRC skimmed money from the Fidelity Funds by charging and collecting fees from the
Fidelity Funds in violation of the Investment Company Act and the Investment Advisers Act.
The purpose and effect of said scheme, practice and course of conduct was to enrich FMR and
FMRC, among other defendants, at the expense of the Fidelity Funds. FMR and FMRC
breached their fiduciary duties owed to the Fidelity Funds by engaging in the aforesaid
transactions, practices and courses of business knowingly or recklessly so as to constitute a deceit
and fraud upon the Fidelity Funds.

137.    FMR and FMRC are liable as direct participants in the wrongs complained of
herein. FMR and FMRC, because of their position of authority and control over the Fidelity
Funds were able to and did control the fees charged to and collected from the Fidelity Funds and
otherwise control the operations of the Fidelity Funds.

138.    FMR and FMRC had a duty to (1) disseminate accurate and truth information
with respect to the Fidelity Funds; and (2) truthfully and uniformly act in accordance with their
stated policies and fiduciary responsibilities to the Fidelity Funds. FMR and FMRC participated
in the wrongdoing complained of herein in order to prevent the Fidelity Funds from knowing of
FMR and FMRC's breaches of fiduciary duties including: (1) the charging of the Fidelity Funds
and Fidelity Funds investors improper Rule 12b-1 marketing fees; (2) making improper
undisclosed payments of Soft Dollars; (3) making unauthorized use of "directed brokerage" as a

marketing tool; and (4) charging the Fidelity Funds for excessive and improper commission payments to brokers.

139.    As a result of FMR and FMRC's multiple breaches of their fiduciary duties owed to the Fidelity Funds, the Fidelity Funds were damaged.

140.    The Fidelity Funds are entitled to rescind their investment advisory contracts with FMR and FMRC and recover all fees paid in connection with their enrollment pursuant to such agreements.

## COUNT V

### Breach of Fiduciary Duty Against
### FMR and FMRC On Behalf Of The Class

141.    Plaintiffs repeat and reallege each of the preceding allegations as though fully set forth herein.

142.    As advisers to the Fidelity Funds, FMR and FMRC were fiduciaries to the plaintiffs and other members of the Class and were required to act with the highest obligations of good faith, loyalty, fair dealing, due care and candor.

143.    As set forth above, FMR and FMRC breached their fiduciary duties to plaintiffs and the Class.

144.    Plaintiffs and the Class have been specially injured as a direct, proximate and foreseeable result of such breach on the part of FMR and FMRC and have suffered substantial damages.

145.    Because FNR and FMRC acted with reckless and willful disregard for the rights of the plaintiffs and other members of the Class, FMR and FMRC are liable for punitive damages in an amount to be determined by the jury.

F:\FIDELITY\CMPLTAWA.WPD

## COUNT VI

### Breach of Fiduciary Duty Against The
### Trustee Defendants On Behalf Of The Class

146.    Plaintiffs repeat and reallege each of the preceding allegations as though fully set forth herein.

147.    As Fidelity Funds trustees, the Trustee Defendants had a fiduciary duty to the Fidelity Funds and Fidelity Funds investors to supervise and monitor FMR, FMRC and FDC.

148.    The Trustee Defendants breached their fiduciary duties by reason of the acts alleged herein, including their knowing or reckless failure to prevent FMR, FMRC and FDC from (1) charging the Fidelity Funds and Fidelity Funds investors improper Rule 12b-1 marketing fees; (2) making improper undisclosed payments of Soft Dollars; (3) making unauthorized use of "directed brokerage" as a marketing tool; and (4) charging the Fidelity Funds for excessive and improper commission payments to brokers.

149.    Plaintiffs and the Class have been specially injured as a direct, proximate and foreseeable result of such breach on the part of Trustee Defendants and have suffered substantial damages.

150.    Because Trustee Defendants acted with reckless and willful disregard for the rights of plaintiffs and other members of the Class, the Trustee Defendants are liable for punitive damages in an amount to be determined by the jury.

## COUNT VII

### Aiding And Abetting A Breach Of Fiduciary Duty Against
### FMR, FMRC and FDC On Behalf Of The Class

151.    Plaintiffs repeat and reallege each of the preceding allegations as though fully set forth herein.

F:\FIDELITY\CMPLTAWA.WPD

152.    At all times herein, the broker dealers that sold Fidelity Funds had fiduciary duties of loyalty to their clients, including plaintiffs and other members of the Class.

153.    FMR, FMRC and FDC knew or should have known that the broker dealer had these fiduciary duties.

154.    By accepting improper Rule 12b-1 fees, Soft Dollars and excessive commissions in exchange for aggressively pushing Fidelity Funds, and by failing to disclose the receipt of such fees, the brokerages breached their fiduciary duties to plaintiffs and the other members of the Class.

155.    FMR, FMRC and FDC possessed actual or constructive knowledge that the brokerages were breaching their fiduciary duties, but nonetheless perpetrated the fraudulent scheme alleged herein.

156.    FMR, FMRC and FDC's actions, as described in this complaint, were a substantial factor in causing the losses suffered by plaintiffs and the other members of the Class. By participating in the brokerages' breaches of fiduciary duties, FMR, FMRC and FDC are liable therefor.

157.    As a direct, proximate and foreseeable result of FMR, FMRC and FDC's knowing participation in the brokerages' breaches of fiduciary duties, plaintiffs and the Class have suffered damages.

158.    Because FMR, FMRC and FDC acted with reckless and willful disregard for the rights of Plaintiffs and other members of the Class, FMR, FMRC and FDC are liable for punitive damages in an amount to be determined by the jury.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs pray for relief and judgment, as follows:

F:\FIDELITY\CMPLTAWA.WPD

A.    Determining that this action is a proper class action, certifying plaintiffss as the Class representatives and plaintiffs' counsel as Class counsel pursuant to Rule 23(a) of the Federal Rules of Civil Procedure;

B.    Awarding compensatory damages in favor of plaintiffs and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding punitive damages in favor of plaintiffs and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

D.    Awarding the Fidelity Funds rescission of their contracts with FMR and FMRC, including recovery of all fees which would otherwise apply, and recovery of all fees paid to FMR and FMRC;

E.    Ordering an accounting of all Fidelity Funds-related fees, commissions, and Soft Dollar payments;

F.    Ordering restitution of all unlawfully or discriminatorily obtained fees and charges;

G.    Awarding such other and further relief as this Court may deem just and proper, including any extraordinary equitable and/or injunctive relief as permitted by law or equity to attach, impound or otherwise restrict the defendants' assets to assure that Plaintiffs and the Class have an effective remedy;

H.    Awarding plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

I.    Such other and further relief as the Court may deem just and proper.

F:\FIDELITY\CMPLTAWA.WPD

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

DATED: August 3, 2004

Respectfully submitted,

**MOULTON & GANS, P.C.**

By _Nancy Freeman Gans_

Nancy Freeman Gans (BBO #184540)
33 Broad Street
Boston, MA 02109-4216
(617) 369-7979

**STULL, STULL & BRODY**
Jules Brody
Aaron Brody
Tzivia Brody
6 East 45th Street
New York, New York 10017
(212) 687-7230

**WEISS & YOURMAN**
Joseph H. Weiss
551 Fifth Avenue
New York, New York 10176
(212) 682-3025

**Attorneys for Plaintiffs**

F:\FIDELITY\CMPLTAWA.WPD

## EXHIBIT A

Fidelity Advisor Aggressive Growth
Fidelity Advisor Asset Allocation Fund
Fidelity Advisor Balanced Fund
Fidelity Advisor Biotechnology Fund
Fidelity Advisor California Municipal Income Fund
Fidelity Advisor Consumer Industries Fund
Fidelity Advisor Cyclical Industries Fund
Fidelity Advisor Developing Communications Fund
Fidelity Advisor Diversified International Fund
Fidelity Advisor Dividend Growth Fund
Fidelity Advisor Dynamic Capital Appreciation Fund
Fidelity Advisor Electronics Fund
Fidelity Advisor Emerging Asia Fund
Fidelity Advisor Emerging Markets Fund
Fidelity Advisor Emerging Markets Income Fund
Fidelity Advisor Equity Growth Fund
Fidelity Advisor Equity Income Fund
Fidelity Advisor Europe Capital Appreciation Fund
Fidelity Advisor Fifty Fund
Fidelity Advisor Financial Services Fund
Fidelity Advisor Floating Rate High Income Fund
Fidelity Advisor Freedom 2000 Fund
Fidelity Advisor Freedom 2005 Fund
Fidelity Advisor Freedom 2010 Fund
Fidelity Advisor Freedom 2015 Fund
Fidelity Advisor Freedom 2020 Fund
Fidelity Advisor Freedom 2025 Fund
Fidelity Advisor Freedom 2030 Fund
Fidelity Advisor Freedom 2035 Fund
Fidelity Advisor Freedom 2040 Fund
Fidelity Advisor Freedom Income Fund
Fidelity Advisor Global Equity Fund
Fidelity Advisor Government Investment Fund
Fidelity Advisor Growth & Income Fund
Fidelity Advisor Growth & Income Fund II
Fidelity Advisor Growth Opportunities Fund
Fidelity Advisor Health Care Fund
Fidelity Advisor High Income Advantage Fund
Fidelity Advisor High Income Fund
Fidelity Advisor Inflation-Protected Bond Fund
Fidelity Advisor Intermediate Bond Fund
Fidelity Advisor International Capital Appreciation Fund

Fidelity Advisor International Small Cap Fund
Fidelity Advisor Investment Grade Bond Fund
Fidelity Advisor Japan Fund
Fidelity Advisor Korea Fund
Fidelity Advisor Large Cap Fund
Fidelity Advisor Latin America Fund
Fidelity Advisor Leveraged Company Stock Fund
Fidelity Advisor Mid Cap Fund
Fidelity Advisor Mortgage Securities Fund
Fidelity Advisor Municipal Income Fund
Fidelity Advisor Natural Resources Fund
Fidelity Advisor New Insights Fund
Fidelity Advisor New York Municipal Income Fund
Fidelity Advisor Overseas Fund
Fidelity Advisor Real Estate Fund
Fidelity Advisor Short Fixed-income Fund
Fidelity Advisor Short-Intermediate Municipal Income Fund
Fidelity Advisor Small Cap Fund
Fidelity Advisor Strategic Dividend & Income Fund
Fidelity Advisor Strategic Growth Fund
Fidelity Advisor Strategic Income Fund
Fidelity Advisor Tax Managed Stock Fund
Fidelity Advisor Technology Fund
Fidelity Advisor Telecommunications & Utilities Growth Fund
Fidelity Advisor Value Fund
Fidelity Advisor Value Leaders Fund
Fidelity Advisor Value Strategies Fund
Fidelity Aggressive International Fund
Fidelity Air Transportation Portfolio
Fidelity Arizona Municipal Money Market Fund
Fidelity Asset Manager
Fidelity Asset Manager: Aggressive
Fidelity Asset Manager: Growth
Fidelity Asset Manager: Income
Fidelity Automotive Portfolio
Fidelity Banking Portfolio
Fidelity Blue Chip Growth Fund
Fidelity Blue Chip Growth Fund
Fidelity Blue Chip Value Fund
Fidelity Brokerage/Investment Management Market Fund
Fidelity Canada Fund
Fidelity Capital & Income Fund
Fidelity Capital Appreciation Fund
Fidelity Cash Reserves
Fidelity Chemicals Portfolio

Fidelity China Region Fund
Fidelity Computers Portfolio
Fidelity Connecticut Municipal Money Market Fund
Fidelity Construction & Housing Portfolio
Fidelity Contrafund
Fidelity Convertible Securities Fund
Fidelity Defense & Aerospace Portfolio
Fidelity Disciplined Equity Fund
Fidelity Discovery Fund
Fidelity Energy Portfolio
Fidelity Energy Service Portfolio
Fidelity Environmental Portfolio
Fidelity Equity-Income Fund
Fidelity Equity-Income Fund II
Fidelity Europe Fund
Fidelity Export And Multinational Fund
Fidelity Florida Municipal Money Market Fund
Fidelity Focused Stock Fund
Fidelity Food & Agriculture Portfolio
Fidelity Four-In-One Index Fund
Fidelity Fund
Fidelity Ginnie Mae Fund
Fidelity Global Balanced Fund
Fidelity Gold Portfolio
Fidelity Government Income Fund
Fidelity Growth Company Fund
Fidelity Home Finance Portfolio
Fidelity Independence Fund
Fidelity Industrial Equipment Portfolio
Fidelity Industrial Materials Portfolio
Fidelity Insurance Portfolio
Fidelity Intermediate Government Income Fund
Fidelity International Growth & Income Fund
Fidelity Japan Smaller Companies Fund
Fidelity Large Cap Stock Fund
Fidelity Leisure Portfolio
Fidelity Low-Priced Stock Fund
Fidelity Magellan Fund
Fidelity Massachusetts Municipal Money Market Fund
Fidelity Medical Delivery Portfolio
Fidelity Medical Equipment Systems/ Portfolio
Fidelity Michigan Municipal Money Market Fund
Fidelity Mid-Cap Stock Fund
Fidelity Money Market Trust: Retirement Government Money Market Portfolio
Fidelity Money Market Trust: Retirement Money Market Portfolio

Fidelity Multimedia Portfolio
Fidelity Municipal Money Market Fund
Fidelity Nasdaq Composite Index Fund
Fidelity Natural Gas Portfolio
Fidelity Networking & Infrastructure Portfolio
Fidelity New Jersey Municipal Money Market Fund
Fidelity New Markets Income Fund
Fidelity New Millennium Fund
Fidelity New York Municipal Money Market Fund
Fidelity Nordic Fund
Fidelity Ohio Municipal Money Market Fund
Fidelity OTC Portfolio
Fidelity Pacific Basin Fund
Fidelity Paper & Forest Products Portfolio
Fidelity Pennsylvania Municipal Money Market Fund
Fidelity Pharmaceuticals Portfolio
Fidelity Puritan Fund
Fidelity Real Estate Income Fund
Fidelity Retailing Portfolio
Fidelity Select Money Market Portfolio
Fidelity Short-Term Bond Fund
Fidelity Small Cap Independence Fund
Fidelity Small Cap Retirement Fund
Fidelity Small Cap Stock Fund
Fidelity Software/computer Services Portfolio
Fidelity Southeast Asia Fund
Fidelity Spartan Government Income Fund
Fidelity Stock Selector Fund
Fidelity Structured Large Cap Growth Fund
Fidelity Structured Large Cap Value Fund
Fidelity Structured Mid Cap Growth Fund
Fidelity Structured Mid Cap Value Fund
Fidelity Tax-Free Money Market Fund
Fidelity Total Bond Fund
Fidelity Transportation Portfolio
Fidelity Trend Fund
Fidelity U.S. Bond Index Fund
Fidelity U.S. Government Reserves
Fidelity Ultra-short Bond Fund
Fidelity Utilities Fund
Fidelity Utilities Growth Portfolio
Fidelity Value Discovery Fund
Fidelity Wireless Portfolio
Fidelity Worldwide Fund
Spartan 500 Index Fund

F:\FIDELITY\CMPLTAWA.WPD

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)    Ghassan J. Awali, et als. v. Fidelity Management and Research Company, et als.

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET.  (SEE LOCAL RULE 40.1(A)(1)).

   XXX  I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ___  II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
              740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.        for patent, trademark or copyright cases

   ___  III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
              315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
              380, 385, 450, 891.

   ___  IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
              690, 810, 861-865, 870, 871, 875, 900.

   ___  V.    150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.
   Gilliam, etc. v. Fidelity Management and Research Company, et als.,
   CA No: 04-11600-RGS

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?
                                                      YES          NO

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST?   (SEE 28 USC §2403)
                                                      YES          NO
   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?
                                                      YES          NO

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?
                                                      YES          NO

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).
                                                      YES          NO

   A.    IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

         EASTERN DIVISION          CENTRAL DIVISION          WESTERN DIVISION

   B.    IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?

         EASTERN DIVISION          CENTRAL DIVISION          WESTERN DIVISION

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME  Nancy Freeman Gans
ADDRESS  Moulton & Gans, P.C., 33 Broad St., Suite 1100, Boston, MA 02109-4216
TELEPHONE NO.  617-369-7979

(Cover sheet local.wpd  - 11/27/00)